NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IDA OPACITY, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 05-CV-05328(DMC) |
| ARAMARK SPORTS, LLC, JOHN GARBO, and SANDRA GRAHAM | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendants Aramark Sports, LLC ("Aramark"), John Garbo, and Sandra Graham (collectively "Defendants") for summary judgment pursuant to Fed. R. Civ. P. 56(c). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' motion for summary judgment is **granted**.

**I.    BACKGROUND[1]**

This case arises from alleged unlawful discrimination against Plaintiff Ida Opacity ("Plaintiff"), who claims she was subject to discrimination because of her age and alleged disability,

---

[1] The facts set forth in this Opinion are taken from the undisputed facts set forth in the parties' Rule 56.1 statements in their respective moving papers.

and as a result claims she was denied her seniority rights, appropriate meals, a new uniform, gratuities, and the conditions of her working space were left in disarray.

Plaintiff has been employed at the Meadowlands Complex ("The Complex") since September 1976. Plaintiff's original employer was Harry M. Stevens, Inc., Aramark's predecessor in the management of food services at the Complex. Plaintiff worked both as a waitress in the press lounge and as a coat check at Giant's Stadium until 1984. Since 1984 Plaintiff has worked solely as a coat check at the "Stadium Club" in the Stadium. Since 1997, Plaintiff also worked as a coat check in the "Dewer's 12 Winner's Club" in the Continental Airlines Arena. These clubs are open to members before, during, and after sporting events for food and beverages.

Plaintiff's employment terms are governed by the Master National Agreement between Harry M. Stevens, Inc. and Hotel Employees and Restaurant Employees International Union for Indoor Arenas & Ball Parks as well as subsequent Addendums to the agreement proffered in 1999, 2002, and 2005, known cumulatively as the Collective Bargaining Agreement (CBA). The CBA includes terms relating to job classifications, seniority, wages and hours, meals, and the grievance procedure for complaints.

Plaintiff's services as a coat check are employed during regular season New York Giants football games at the Stadium and regular season Seton Hall University and New Jersey Nets basketball games and (before they moved to the Prudential Center) New Jersey Devils hockey games at the Arena. Plaintiff's services are also employed at private parties, reserved through the New Jersey Sports & Exposition Authority and coordinated by Aramark, in the Winners and Stadium Clubs. A coat check is not readily supplied by Aramark and the individual or group reserving the party must request and pay an additional charge for coat check services. It is

management policy that two sporting events never take place at the Complex at the same time, nor will a sporting event and a private party occur in the same facility at the same time. Management will permit a sporting event to occur in one facility and a private party in the other, but the sporting event takes priority.

Plaintiff notified Aramark and the Union of her various complaints through a series of letters written between September 2002 and March 2004. The various letters were addressed to either Michael Smedley (president of the Union), Donald Versace (former Aramark general manager responsible for the Arena), or Bill "Billy" Lohr (Aramark regional manager responsible for the Complex). In the letters, Plaintiff objected to the condition of the coatroom and complained that she had not received gratuities from private parties to which she claimed she was entitled and demanded that this money be paid to her. Further, Plaintiff alleged that she was denied her seniority right to choose which event she would like to work when a sporting event and private party occurred simultaneously, and she requested to be notified whenever an event occurred at the Complex and be given the opportunity to work.

Another letter was written by Plaintiff to Aramark on March 7, 2005, in which Plaintiff listed "what [she and her attorney] will be asking from Aramark Corporation." Each issue was promptly addressed and, if possible, rectified by Aramark. First, Plaintiff objected to the state of the coatroom. Aramark responded by removing any unnecessary items. Plaintiff complained that she did not have a key to lock the door of the coat room and therefore if she stepped away, the room was easily accessible to other employees and Complex patrons. Aramark responded by giving Plaintiff a key to the coat room. Plaintiff also complained about the meals provided to her and claimed that they were in violation of the CBA terms regarding meals. Aramark responded by

confirming that all employees were provided with both a snack of chicken, french fries, or pizza before their shift started, as well as the buffet offered to the paying customers after those patrons were served. Additionally, Plaintiff requested a new uniform to wear to work. Aramark responded by directing Plaintiff to get fitted for a uniform. Plaintiff also complained that she was prohibited from drinking Perrier Water. Aramark responded by clarifying that Plaintiff could drink Perrier, but like all other employees, she would have to pay for this special type of water.

Plaintiff's chief complaint/request set forth in the March 2005 letter was that she was not paid gratuities for private parties where her services were employed, and she sought such payment from Aramark. Aramark responded by determining that Plaintiff was not entitled to such gratuities because coat check services are classified as a non-tipped job by the CBA. The CBA provides that for private parties hosted by resident sports teams or the New Jersey Sports and Exposition Authority, there is a standard 18% gratuity and for all other private parties the gratuity is a standard 20%. The CBA also sets forth the jobs which regularly receive tips and those that do not. Included within the CBA are the annual wage increases for tipped and non-tipped category jobs. Each year, non-tipped jobs receive a greater increase than tipped jobs. The wage increase for coat check services, as listed in Article 12 of the 2002 Addendum, is equivalent to the increase for non-tipped categories. Plaintiff is, however, permitted to keep over-the-counter tips she receives from individual customers.

Plaintiff claims that these issues have stemmed from discrimination towards her based on her age and disability in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq*. Plaintiff alleges she has a panic disorder, high cholesterol, high blood pressure and a weight problem. Plaintiff has never inquired with Aramark about accommodations for these conditions

nor does she allege that these conditions interfere with her work. Plaintiff admits she has only suffered a panic attack at work on one occasion. At that time, Plaintiff was permitted to contact her husband and leave work. Aramark has never been supplied with information about Plaintiff's conditions, and no medical records, expert reports, or medical authorization have been provided to support her discrimination claims. Plaintiff has also failed to avail herself of the formal grievance procedure, which requires claims to be resolved through arbitration, set forth in the CBA before commencing this suit.

Plaintiff brought a Motion to Remand her discrimination claims to state court. This court denied the motion on April 28, 2006 holding that Plaintiff's claims require interpretation of the CBA in order to be resolved and state law is therefore preempted.

## II.     STANDARD OF REVIEW: RULE 56 SUMMARY JUDGMENT

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing that there is no genuine issue of fact. Id. "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." Schoch

v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). Importantly, however, "[i]n determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000) aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

### III. DISCUSSION

After carefully reviewing the papers submitted by all parties, this Court finds that summary judgment is **granted** in favor of Defendants Aramark Sports, LLC, John Garbo, and Sandra Graham.

**Preemption of Claims**

Plaintiff brought suit under New Jersey state law, specifically the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq*, claiming she was discriminated against on the basis of her age and disability. Plaintiff alleges various actions on the part of her employer, Aramark, in violation of the CBA governing her employment, which amounted to this alleged discrimination. This Court previously determined that the resolution of Plaintiff's claims depends on interpretation of the CBA, and consequently "the application of state law is preempted and federal labor law principles must be employed to resolve the dispute." Opacity v. Aramark, 2006 U.S. Dist. LEXIS 24066, at *10 (D. N. J. April 28, 2006).

The Supremacy Clause of Art. IV of the United States Constitution gives Congress the power to preempt state law. When a federal statute does not expressly state that it is meant to preempt state law, there is a presumption against preemption and state law should apply "unless it

conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States."Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985) (citing Malone v. White Motor Corp., 435 U.S. 497, 504 (1978)). In Textile Workers v. Lincoln Mills, 353 U.S. 448 (1957), the Supreme Court used the congressional history and findings supporting § 301 of the Labor Management Relations Act ("LMRA"), to rule that Congress intended for it to preempt state law and that the federal law to be applied should be fashioned "from the policy of our national labor laws." Id. at 457. The Court further supported its finding of field preemption associated with § 301 in Teamsters v. Lucas Flour Co., 369 U.S. 95,103 (1962) ruling that Congress intended for a uniform federal labor law to surmount inconsistent state law. The Teamsters decision specifically the importance of interpreting collective-bargaining agreements under federal law rather than state law:

> The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract. Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation... [and] might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes.

Allis-Chalmers, 471 U.S., at 210 (citing Teamsters, 369 U.S. at 103-104). Based on these concerns, the Supreme Court determined that anytime a state law involves construing the terms or bounds of

a collective-bargaining agreement, federal labor law will take precedent and be used to resolve the issue. Accordingly, because Plaintiff's claims involve interpretation of the CBA, the state law claims must be dismissed as preempted and can only be raised under § 301. Plaintiff, however, did not bring her complaints under the relevant federal law, and whether her claims would prevail under such law is not currently before this Court and need not be addressed here.

The CBA governing Plaintiff's employment sets forth that "the remedy of grievance and arbitration shall be the sole and exclusive forum... for any alleged dispute arising out of or concerning the application or interpretation of this Agreement." CBA$^2$. Since this Court has previously ruled that Plaintiff's claims involve interpretation and analysis of the CBA, Plaintiff was required to first seek a remedy through arbitration before bringing this issue before the Court. The only grounds for judicial enforcement of the CBA and bypass of the grievance procedures exist to prove that the union breached "its statutory duty of fair representation to the employee." Vaca v. Sipes, 386 U.S. 171, 185 (1967). Plaintiff, however, withdrew her duty of fair representation claim to strengthen her motion to remand the case to state court (which was subsequently denied), and thus has no grounds to bypass arbitration and seek judicial enforcement.

Therefore, because Plaintiff's claims are preempted by § 301 of the LMRA and the arbitration clause of the CBA, and because Plaintiff withdrew her duty of fair representation claim, this Court cannot resolve the Plaintiff's state law discrimination complaints. Summary Judgment is **granted**.

**Discrimination Claims**

Additionally, addressing Plaintiff's discrimination claims, this Court finds that Plaintiff has

---

$^2$Exhibits E-H attached to Defendants' Memorandum of Law in Support of Summary Judgment.

failed to raise a genuine issue of material fact remaining on any of these claims. Plaintiff maintains that she was discriminated against because of her age and alleged disability. A plaintiff claiming discrimination in employment must prove the following to establish a *prima facie* case: (1) she is a member of a protected class; (2) she was qualified for the position at issue; (3) she was denied the position despite being qualified or otherwise suffered some action at the hand of the employer; and (4) after plaintiff was denied the position, the employer sought to fill the open slot with someone of plaintiff's qualifications. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The fourth prong requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion . . . ." (O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996) (citing Teamsters v. United States, 431 U.S. 324, 358 (1977)) and can be satisfied by showing "a 'similarly situated' individual, in a non-protected class, was treated more favorably than she." Watkins v. Children's Hosp. of Phila., No. 97-1510, 1997 LEXIS 19268, at *5 (E.D. Pa. Dec. 3, 1997). Once a plaintiff establishes the prima facie discrimination case, the defending employer must articulate a legitimate, non-discriminatory reason for its treatment of the plaintiff. McDonnell Douglas, 411 U.S. at 802.

Plaintiff has failed to establish the *prima facie* case for both her age and disability discrimination claims. On her age discrimination claim, Plaintiff failed to proffer any evidence that she was treated any differently than other similarly situated Aramark employees, and therefore has failed to prove the fourth prong of the *prima facie* case. Likewise, Plaintiff has failed to establish that she has a disability as defined under NJLAD, nor has she established that she is a member of a protected class for her disability discrimination claim. Plaintiff's alleged disability is an anxiety disorder. Under NJLAD, non-physical handicaps of this sort require an ample amount of medical proof in order to be considered a disability and Plaintiff's own admission of her disorder is not sufficient. See Alm v. Marriott Corp., No. 90-3649, 1991 U.S. Dist. LEXIS 21665, at *14 (D. N.J.

Nov. 4, 1991); Ashton v. AT&T Corp., No. 03-CV-3158, 2005 U.S. Dist. LEXIS 21419, at *10 (D. N.J. Sept. 21, 2005). When a "party... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then summary judgment should be granted. Celotex, 477 U.S. at 322. As such, Defendants' motion for summary judgment is **granted**.

### IV.    CONCLUSION

For the reasons stated, it is the finding of this Court that Defendants Aramark Sports, LLC, John Garbo, and Sandra Graham's motion for summary judgment is **granted**

                                             S/ Dennis M. Cavanaugh
                                            Dennis M. Cavanaugh, U.S.D.J.

Date:   June  16 ,
Orig:   Clerk
CC:     All Counsel of Record
        Hon. Mark Falk, U.S.M.J.
        File